# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TECHINOMICS, INC., | ) Civil Action No. 2:16-1859 |
| Plaintiff, | ) |
| v. | ) Magistrate Judge Lisa Pupo Lenihan |
| | ) District Judge Cathy Bissoon |
| FOREST POWER & ENERGY HOLDING, INC., | ) |
| | ) ECF No. 8 |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

### I.     RECOMMENDATION

For the following reasons, it is respectfully recommended that Plaintiff's Motion to Dismiss Counterclaims under Rule 12(b)(6) (ECF No. 8) be denied.

### II.    REPORT

#### A.     Background

Techinomics, Inc ("Plaintiff") "owns patents for an industrial product called a 'Rotating Throat,' which improves the performance of coal pulverizers in coal plants." (Compl., ECF No. 1-2 ¶ 6). Forest Holdings ("Defendant") "desired to license Techinomics' Rotating Throat technology to market it in the China market." (Id. ¶ 7). On September 8, 2014, the parties entered into a "Know-How Transfer Agreement" ("Agreement"), in which Plaintiff granted Defendant the exclusive license to market the Rotating Throats in the "Implemented Territory" (Mainland China, Hong Kong, and Taiwan) in exchange for a series of fixed installment payments totaling $2 million. (Id. ¶¶ 8, 10). Plaintiff also agreed, among other things, to provide technical and sales support. (Id. ¶ 11). Defendant timely made its first two installment payments under the Agreement in September 2014 and March 2015. (Id. ¶ 18). However, Defendant has not made

any additional payments. (Id. ¶ 19). On October 25, 2016, Plaintiff invoked its right under Section 3.3 of the Agreement and converted Defendant's "transfer right to a non-exclusive license and demanded payment of the past due installment payments totaling $750,000 and a final payment $187,500, representing one-quarter of the remaining $750,000 in installment payments." (Id. ¶ 30).

After Defendant refused to make this payment, Plaintiff initiated this action for breach of contract in the Court of Common Pleas of Allegheny County. This case was removed to the United States District Court for the Western District of Pennsylvania based on diversity jurisdiction on December 14, 2016. (ECF No. 1). On January 17, 2017, Defendant filed an answer and affirmative defenses, as well as four counterclaims: fraudulent inducement (Count I), negligent misrepresentation (Count II), breach of contract (Count III), and breach of express warranty (Count IV). Plaintiff now moves to dismiss Defendant's counterclaims in Counts I and II. (ECF No. 8). The motion has been fully briefed (ECF Nos. 9-11) and is ripe for disposition.

**B.      Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "The District Court must accept the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. In short, a motion to dismiss should be granted if a party does not allege facts which could, if established at trial, entitle him to relief. See Fowler, 578 F.3d at 211.

2

C.  **Discussion**

Defendant alleges in Counts I and II that Plaintiff either fraudulently or negligently "made various representations in emails, orally, and in person . . . including but not limited to whether its Rotating Throat technology would work with any vertical spindle pulverizers and whether they are qualified to design and adjust its Rotating Throat technology in accordance with the customers' needs in China." (Answer, ECF No. 7 ¶ 75).

Allegedly "[i]n reliance on [these] representations, Forest entered into the Agreement with Techinomics, and additionally entered into contracts with third party customers for the sale of Techinomics' Rotating Throat technology which Forest had contracted to license from Techinomics." (Id. ¶ 80). Sometime thereafter, the Rotating Throat technology was installed at three "Demo Projects" at the Waigaoqiao, the Qinbei, and Mudanjiang power plants. (Id. ¶ 49). All three Demo Projects failed, and Plaintiff's efforts to make adjustments to the Demo Projects were not successful. (Id. ¶¶ 53-55). As a result, Defendant's "customers, Waigaoqiao Power Plant, Qinbei Power Plant, and Mudanjiang Power Plant, all refused to accept Techinomics' equipment and technology, and further refused to make payment to Forest." (Id. ¶ 64). Defendant claims that, despite its representations, "Techinomics did not have the capacity to make its technology compatible with the China market." (Id. ¶ 61). Defendant also claims that "Techinomics had no credible or reliable experience with any other type of vertical spindle pulverizers other than MPS-89 and MPS-75 at the time the Agreement was entered into" or any "successful experience with any large unit pulverizers that are bigger than MPS-89 and MPS-75[.]" (Id. ¶¶ 59-60).

Plaintiff moves to dismiss Counts I and II, on the grounds that they are barred by the gist of the action doctrine and/or the parol evidence rule. These arguments will be addressed *seriatim*.

3

### 1. **Gist of the Action Doctrine**

The parties dispute whether the gist of the action doctrine bars Defendant's counterclaims for fraudulent inducement and negligent misrepresentation. From Plaintiff's perspective, these claims are barred because they are "inextricably intertwined with [Defendant's] breach of contract claim." (ECF No. 9 at 5). Defendant, however, counters that the gist of the action doctrine does not apply because its counterclaims relate to fraud and/or negligent misrepresentation in the inducement, as opposed to fraud in the performance of the contract.

Under Pennsylvania law, the gist of the action doctrine prevents a party from "bring[ing] a tort claim for what is, in actuality, a claim for a breach of contract." Bruno v. Erie Ins. Co., 106 A.3d 48, 60 (Pa. 2014). The Supreme Court of Pennsylvania has emphasized "that the mere existence of a contract between two parties does not" turn a claim by one contracting party against the other contracting party "for injury or loss suffered as the result of actions of the other party in performing the contract" into "one for breach of contract." Id. at 69. Instead, "the nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint, [is] the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract." Id. at 68 (footnote omitted). "If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract." Id. On the other hand, if "the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the

law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort."[1] Id. (citations omitted).

"Pennsylvania state and federal courts have reached different conclusions about whether the gist of the action doctrine applies to fraudulent inducement claims." Downs v. Andrews, 639 F. App'x 816, 820 (3d Cir. 2016) (citing Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 719 (Pa. Super. Ct. 2005); Vives v. Rodriguez, 849 F. Supp. 2d. 507, 518–20 (E.D. Pa. 2012)). More than a decade ago in Williams v. Hilton Group PIC, the Third Circuit affirmed the dismissal of fraud claims involving breach of an exclusive negotiation agreement under the gist of the action doctrine despite evidence that the defendant never intended to honor its promise of exclusivity. 93 F. App'x 384 (3d Cir. 2004) (per curiam). However, "the Williams court did not have the benefit of the Superior Court's subsequent decision in Sullivan[, 873 A.2d at 719], which permitted a claim for fraud in the inducement predicated upon the same promises that it found to be sufficient to make out a contract claim." H Contractors, LLC v. E.J.H. Constr., Inc., No. CV 16-368, 2017 WL 658240, at *5 (W.D. Pa. Feb. 16, 2017). As this Court recently explained, the result in Sullivan "undercuts the majority holding in Williams, and supports the dissent's view [in Williams] that under the Pennsylvania cases, where there is 'fraudulent intent, i.e., a subjective and undisclosed intent not to perform, a fraud claim is stated.'" Id. (quoting

---

[1] Before the Pennsylvania Supreme Court's decision in Bruno, the Superior Court's decision in eToll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10 (Pa. Super. Ct. 2002), was typically regarded as the seminal exposition on the gist of the action doctrine in Pennsylvania. It is from eToll that Plaintiff draws its "inextricably intertwined" argument. While Bruno "did not explicitly overrule eToll or its progeny," the court in Bruno did take note that eToll "creates a divide in the gist of the action jurisprudence . . . and cabined reliance on eToll's 'inextricably intertwined' language." Dommel Properties LLC v. Jonestown Bank & Trust Co., 626 F. App'x 361, 366 (3d Cir. 2015). The phrase "inextricably intertwined," as the Bruno court explained, should be viewed as a shorthand "determination of whether the nature of the duty upon which the breach of contract claims rest is the same as that which forms the basis of the tort claims." Bruno, 106 A.3d at 69. But it should not be viewed as an independent requirement for analyzing whether the gist of the action doctrine applies.

5

Williams, 93 F. App'x at 390 (Becker, J., dissenting)).

The Superior Court of Pennsylvania also recently held in a pair of cases that the "gist of the action doctrine [did] not bar a negligent misrepresentation claim." Dixon v. Nw. Mut., 146 A.3d 780, 789 (Pa. Super. Ct. 2016) (citing Telwell Inc. v. Grandbridge Real Estate Capital, 143 A.3d 421, 429 (Pa. Super. Ct. 2016)). In Tellwell, for example, the plaintiff alleged that the defendant both fraudulently and negligently misrepresented the amount of the plaintiff's monthly payment. 143 A.3d at 429-30. The Superior Court reversed the trial court's grant of demurrer in favor of the defendant, finding that the gravamen of the plaintiff's claim sounded in tort because "it implicates the 'societal duty not to affirmatively mislead or advise without factual basis.'" Id. (quoting Bruno, 106 A.3d at 58).

In light of Sullivan, Dixon, and Tellwell, and for the reasons set forth by this Court in E.J.H. Construction, 2017 WL 658240, at *5, the gist of the action doctrine should not be viewed as a bar to Defendant's counterclaims for fraudulent inducement and negligent misrepresentation. Accordingly, Plaintiff's motion to dismiss should not be granted on this basis.

### 2. Parol Evidence Rule

Plaintiff next argues that the parol evidence rule bars evidence of the representations allegedly made during the parties' negotiation of the Agreement. Without evidence of those representations, Plaintiff argues, Defendant will not be able to meet its burden as to either of its counterclaims, and so they should be dismissed.

Under Pennsylvania law, if the parties to a contract reduce their agreement to writing, and the writing is determined to represent their "entire contract," the parol evidence rule bars the use of "evidence of any previous oral or written negotiations or agreements involving the same subject matter as the [writing] . . . to explain or vary the terms of the [writing]." Yocca v.

6

Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 436 (Pa. 2004) (internal citations and quotation marks omitted). Relying on Mellon Bank Corp. v. First Union Real Estate Equity & Mortgage. Inv., 951 F.2d 1399, 1408 (3d Cir. 1991), and an array of older Pennsylvania cases, Defendant argues that the parol evidence rule does not apply to any claims of fraudulent inducement. This is incorrect. In Mellon, the Third Circuit assumed "that the Pennsylvania Supreme Court would follow the majority rule" and hold "that the parol evidence rule does not apply in misrepresentation cases." Id. at 1408 n.8 (citing Rempel v. Nationwide Life Ins. Co., 370 A.2d 366, 370 (Pa. 1977)). But more recently, as the Third Circuit has recognized, the Pennsylvania courts have reaffirmed the "distinction between fraud in the execution and fraud in the inducement" vis-à-vis the application of the parol evidence rule. Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1300 (3d Cir. 1996) (discussing HCB Contractors v. Liberty Place Hotel Assoc., 652 A.2d 1278 (PA. 1995) and 1726 Cherry St. P'ship v. Bell Atlantic Properties, Inc., 653 A.2d 663 (Pa. Super. Ct. 1995)). The clear trend in the Pennsylvania case law shows that the parol evidence rule is only inapplicable in cases involving fraud in the execution – *i.e.*, a claim that a term was fraudulently omitted from the parties' writing. Id. The Supreme Court of Pennsylvania has reaffirmed this distinction. See Toy v. Metro. Life Ins. Co., 928 A.2d 186, 205 (Pa. 2007) (citing Yocca, 854 A.2d at 437 n.26). Thus, while at one time this issue was unsettled, see, *e.g.*, 1726 Cherry St., 653 A.2d at 151-154, that is no longer true. Whether "the better view," id., would be to unconditionally allow parol evidence in these circumstances is certainly debatable – but ultimately beside the point because that is not the view that the Pennsylvania courts have adopted.

The Supreme Court of Pennsylvania first applied the parol evidence rule in a case involving fraudulent inducement in Bardwell v. Willis Co., 100 A.2d 102, 104 (Pa. 1953), where

7

it explained:

> Where the alleged prior or contemporaneous oral representations or agreements *concern a subject which is specifically dealt with in the written contract*, and the *written contract covers or purports to cover the entire agreement* of the parties, the law is now clearly and well settled that in the absence of fraud, accident or mistake the alleged oral representations or agreements are merged in or superseded by the subsequent written contract, and parol evidence to vary, modify or supersede the written contract is inadmissible in evidence.

Id. (citations omitted; emphasis added). Thus, for the parol evidence rule to apply in a case involving a fraudulent inducement claim, the court must decide that "(1) the written agreement 'contains terms which directly deal with the subject matter of the alleged oral representation; and (2) represents the entire contract between the parties[.]'" Palermo Gelato, LLC v. Pino Gelato, Inc., No. 2:12-CV-00931, 2013 WL 3147312, at *4 (W.D. Pa. June 19, 2013) (quoting Atl. Pier Assocs., LLC v. Boardakan Rest. Partners, 647 F. Supp. 2d 474, 486 (E.D. Pa. 2009)).

A writing represents the parties' "entire contract" if "it appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the parties' engagement[.]" Yocca, 854 A.2d at 436. The presence of an integration clause stating that the parties' writing represents their entire agreement is "a clear sign" that the writing is fully integrated. Id. At the same time, the absence of an integration clause "does not automatically subject the written agreement to parol evidence." Kehr Packages, Inc. v. Fid. Bank, Nat'l Ass'n, 710 A.2d 1169, 1173 (Pa. Super. Ct. 1998) (citing Int'l Milling Co. v. Hachmeister Inc., 110 A.2d 186, 191 (Pa. 1955)). "Rather, in the absence of an integration clause, the court 'must examine the text [of the agreement] to determine its completeness.'" Id. (quoting Henry v. First Fed. Sav. & Loan Assoc., 459 A.2d 772, 776 (Pa. 1983)).

Applying that standard here, the Court cannot conclude that the Agreement is fully

integrated. To begin with, the Agreement does not contain an integration clause superseding any prior or contemporaneous written or oral agreements. Importantly, Plaintiff has not cited—and the Court's own research as not revealed—any cases from Pennsylvania or the Third Circuit applying the parol evidence rule to bar- under Pennsylvania law- a fraudulent inducement claim in the absence of an integration clause. Cf. Palermo Gelato, 2013 WL 3147312, at *5 (applying parol evidence rule where "[e]ntire Agreement clause plainly state[d] that 'any prior understandings' are superseded by the Agreement"); Yocca, 854 A.2d at 438 (holding that the parties' agreement was fully integrated where it contained a clause "supersed[ing] any representations or agreement previously made by or entered into by the parties"); HCB Contractors, 652 A.2d at 1280 (concluding that the parties' writing was fully integrated since it "expressly over[rode] all prior oral representations"); see also Wall v. CSX Transp., Inc., 471 F.3d 410, 420 (2d Cir. 2006) (noting the dearth of Pennsylvania cases "where an agreement without an integration clause precluded a plaintiff from bringing a suit for fraudulent inducement").

While Plaintiff concedes that the Agreement does not contain an integration clause, it argues that the language in Section 8.3— "NEITHER PARTY HERETO MAKES ANY OTHER REPRESENTATION, EXPRESS NOR IMPLIED"—should be given the same effect as one. "By virtue of this language in the Agreement," Plaintiff argues, Defendant "specifically agreed, *i.e.,* admitted, that no other representations had been made and should not now be permitted to contend otherwise in direct contravention of such agreement." (ECF No. 9 at 7-8). Section 8.3, however, is phrased in the present tense; it says that neither party *makes* any other representation. But it does not disclaim any *prior* representations or reliance on any such representations. Thus, Plaintiff's reliance on the language in Section 8.3 is misplaced.

9

Nor is the Agreement unambiguously complete. To the contrary, the parties appear to have contemplated further related business dealings yet, in various places, left the precise nature of those dealings undefined. More importantly, they left even the particulars of the dealings related to the original undertakings vague and/or undefined. In the face of this uncertainty the Court cannot conclude at this time that the Agreement represents the entirety of the parties' engagement. Compare Yocca, 854 A.2d at 436 (defining requirement, for application of parole evidence to claim of fraudulent inducement that writing "appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the parties' engagement" ).

Assuming, for the sake of argument, that the Agreement were reflective of the entire agreement between the parties, the second component of the parol evidence test, *i.e.* the "same subject matter" requirement, is not satisfied. To satisfy this requirement, the alleged prior representations must "'relate to subjects that were specifically addressed in the written contract.'" Palermo Gelato, 2013 WL 3147312, at *5 (quoting Atl. Pier Assocs., 647 F. Supp. 2d at 486). Defendant alleges that Plaintiff made specific fraudulent representations during the parties' negotiations regarding the extent of Technomics' expertise and experience as to both equipment and international market applications. See ECF No. 7 ¶¶ 7-15. The Agreement, however, does not specifically address the extent of Plaintiff's expertise and experience or, more broadly, the issue of whether the technology would be compatible (or could be made compatible) with the Chinese market.

As neither requirement for applying the parole evidence rule in this context is clearly satisfied, in the absence of an integration clause and without the benefit of discovery, the Court is unable to find at this time that the operation of the parol evidence rule should preclude evidence

of fraud in the inducement. Thus, Defendant's counterclaims should not be barred at this stage of the litigation.

### D. Conclusion

For the foregoing reasons, it is respectfully recommended that Plaintiff's Motion to Dismiss Defendant's Counterclaims (ECF No. 8) be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b) (1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrate Judges, the parties are allowed fourteen (14) days from the date of service of this Report and Recommendation to file objections thereto. Any party opposing the objections shall have fourteen (14) days from the date of service of the objections to respond thereto. Failure to file timely objections shall constitute a waiver of any appellate rights.

Dated: May 11, 2017

_____
Lisa Pupo Lenihan
United States Magistrate Judge